**AUG 1 0 2015**

JA... N. HATTEN, Clerk
Dennis Scheib & Associates, P.C.
by... Deputy Clerk
Sydnor Group, LLC

**UNITED STATES DISTRICT COURT**

**2211 Richard B. Russell Federal Building and**

**United States Courthouse**

**75 Spring Street, S.W.**

**Atlanta-Fulton County, Georgia 30303-3309**

**(404) 215-1600**

| | | |
|---|---|---|
| **Salinas A Weaver,** | ) | Case No.: **1:15-CV-2816** |
| Plaintiffs, | ) | |
| vs. | ) | CLAIM FOR DAMAGES |
| **AHA,** | ) | |
| **ATLANTA HOUSING AUTHORITY,** | ) | |
| **CITY OF ATLANTA,** | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |

On January 06, 2015, and ending January 13, 2015, a pre-application was submitted by Salinas A Weaver for a chance to be on the Atlanta Housing Authority's Housing Choice Voucher Program (HCVP) Waiting List. (see e-mail, Status Notification for AHA Voucher Program) AHA selected 10,000 pre-applications for the final waiting list using a computerized, random

selection process.    Unfortunately, a pre-application was not selected, and that pre-application is not on the waiting list.

According to the C.F.R. 109 - C.F.R. 980, to DISCRIMINATE AFTER ADVERTISING that a your pre-application would be selected by using a computerized, random selection process CONTRADICTS federal regulation as outlined in the C.F.R. 109 - C.F.R. 980 which defines what is HOUSING DISCRIMINATION. The housing discrimination is based on Race, National Origin, Disability Status, Familial Status, and Sex. The 'pre-applicant' submitted the pre-application on January 06, 2015, and ending January 13, 2015.    With  a  instructions  on  how  to  complete  the pre-application online; however, once the pre-application was processed, it was not selected from the random selection process.    The random selection process is HOUSING DISCRIMINATION and UNLAWFUL HOUSING PROCESSING under the UNITED STATES, FEDERAL LAW.

Claim  for  Damages  in  the  amounts  for  $250,0000.00  USD (Two-Hundred Fifty Thousand USD).    This amount may be AMENDED more appropriately as a CIVIL RIGHT, CONSTITUTIONAL RIGHT, and a HOUSING RIGHT by a FEDERAL JUDGE of the UNITED STATES DISTRICT COURT.

**Dated this 10 of August, 2015**

Salinas A Weaver, 649
Ira Street, S.W.,
Atlanta, Ga. 30312-2535

**Subject:** Status Notification for AHA Voucher Program

**From:** WaitListCheck (waitlistcheck@waitlistcheck.com)

**To:** salinas.weaver@yahoo.com;

**Date:** Monday, January 26, 2015 2:10 PM



Dear Salinas Weaver,

During the period beginning January 6, 2015, and ending January 13, 2015, you submitted a pre-application for a chance to be on Atlanta Housing Authority's Housing Choice Voucher Program (HCVP) Waiting List. AHA selected 10,000 pre-applications for the final waiting list using a computerized, random selection process. Unfortunately, your pre-application was not selected, and you are not on the waiting list.

Because you are not one of the 10,000 registrants selected for the waiting list using the computerized, random selection process, you will not be eligible for further consideration for the waiting list. You may, however, apply for future HCVP Waiting Lists in accordance with their application processes. All information submitted on your pre-application will be destroyed and will not be retained by AHA.

For complete information about our affordable housing opportunities, please visit www.atlantahousing.org.

Thank you for your interest.

Sincerely,

Atlanta Housing Authority

> If you require special assistance or reasonable accommodations due to a disability, language translation services, or communication in an alternative format, please visit www.atlantahousing.org.



| Atlanta Housing Authority | HOME | FIND HOUSING | LIST HOUSING |



Select Language ▼

Login | English | Español | Printer Friendly

GEORGIA**HOUSING**SEARCH.ORG

It is imperative that persons searching for rental housing opportunities speak with the landlord and/or property management company and thoroughly inspect the property and surroundings prior to signing any contracts to verify the current status and condition of any property. Read the full disclaimer.

### Your Search Found 38 Properties:
(In Atlanta, 0,1 Bedrooms, Rent range $0 to $160 a month)

<< Previous   [ Showing Properties **1 - 30** / Show All 38 Properties ]   Next >>

### Show These Properties on Map

**Sorted by:** Rent ⌄   | ✓ | Descending ⌄ Re-sort

New Search or Other Resources | See all Properties in Your Rent Range | Search a Different Area

**R** =Income Restricted [?]   **W** =Washer/Dryer   **S** =Seniors Housing   **&** =Some Accessibility Features Included
**🐾** =Some Pets OK   **📷** =Photo   **⊗** =No Smoking [?]   **🤙** =Hablamos Español

Scam Alert! NEW for 2015

🛒 Your Temporary Basket is Empty

We monitor listings, but if you see an issue, we want to hear from you!    Report a Listing

| 🛒 | Click Address for Details ▼ | City State, ZIP | Monthly Rent (Deposit) | Beds/ Baths | Please Call | Date Available | Map 🗺 |
|---|---|---|---|---|---|---|---|
| ☐ | Apts 131 Wellington St. SW $150 Weekly Rate! | Atlanta GA 30314 | $150 ($100) (Negotiable) | 1/1.0 | (Shared Housing/Room to Rent) Joseph Williams 404-201-9987 | Available 🔲 | Map |
| ☐ | Commons at Imperial Apts 355 Peachtree St. NE | Atlanta GA 30338 | $125 - $785 Income Based [?] See Qualifications ($125 - $785) | 0/1.0 | (Apartments) National Church Residences 404-410-1420 | Available 📷 🔲 🔲 **R** ⊗ | Map |

| 🛒 | Click Address for Details ▼ | City State, ZIP | Monthly Rent (Deposit) | Beds/ Baths | Please Call | Date Available | Map 📑 |
|---|---|---|---|---|---|---|---|
| ☐ | Providence Manor<br>2447 Campbellton Road | Atlanta<br>GA<br>30311 | $100 - $300<br>Income Based<br>[ ? ]<br>($175 - $375) | 1/1.0 | (Retirement Community)<br>Housing Resource Center<br>404-816-9770 (423) | Waiting List<br>😊 S 📺 R ⊗ | Map |
| ☐ | Johnnie B Moore Towers I<br>840 Center Hill Avenue | Atlanta<br>GA<br>30318 | $100 - $300<br>Income Based<br>[ ? ]<br>See Qualifications<br>($175 - $375) | 1/1.0 | (Retirement Community)<br>Housing Resource Center<br>404-799-8299 | Waiting List<br>😊 🔲 S 📺 R | Map |
| ☐ | Baptist Towers Apartments<br>1881 Myrtle Drive SW | Atlanta<br>GA<br>30311 | $25 - $501<br>Income Based<br>[ ? ]<br>($25 - $501) | 0/1.0 | (Studio/Efficiency)<br>National Church Residences<br>404-758-4562 | Waiting List<br>📷 😊 🔲<br>S 📺 R | Map |
| ☐ | Baptist Towers Apartments<br>1881 Myrtle Drive SW | Atlanta<br>GA<br>30311 | $25 - $599<br>Income Based<br>[ ? ]<br>See Qualifications<br>($25 - $599) | 1/1.0 | (Retirement Community)<br>National Church Residences<br>404-758-4562 | Waiting List<br>📷 😊 🔲<br>S 📺 R | Map |
| ☐ | Wheat Street Towers Apartments<br>375 Auburn Avenue NE | Atlanta<br>GA<br>30312 | $25 - $771<br>Income Based<br>[ ? ]<br>See Qualifications<br>($25 - $771) | 1/1.0 | (Retirement Community)<br>DWMG REAL ESTATE SERVICES<br>404-525-5673 | Waiting List<br>📷 😊 🔲<br>S 📺 R | Map |
| ☐ | Betmar Village<br>345 Ashwood Avenue<br>Handicap units! | Atlanta<br>GA<br>30315 | $25 - $700<br>Income Based<br>[ ? ]<br>See Qualifications<br>($25 - $700) | 1/1.0 | (Retirement Community)<br>National Church<br>Residences/Betmar Village<br>404-622-1601 | Waiting List<br>😊 S R ⊗ | Map |
| ☐ | Betmar Village<br>345 Ashwood Avenue | Atlanta<br>GA<br>30315 | $25 - $700<br>Income Based<br>[ ? ]<br>See Qualifications<br>($25 - $700) | 1/1.0 | (Retirement Community)<br>National Church<br>Residences/Betmar Village<br>404-622-1601 | Waiting List<br>😊 S R ⊗ | Map |
| ☐ | VetsCare<br>185 Ormond Street (Veterans Only)<br>**HANDICAP ACCESSIBLE UNIT** | Atlanta<br>GA<br>30315 | $0 - $575<br>Income Based<br>[ ? ]<br>See Qualifications<br>($250)<br>(Negotiable) | 1/1.0 | (Apartments)<br>WestCare Georgia<br>404-761-7485 | 06/10/15<br>😊 📺 R ⊗ | Map |

| ☒ | Click Address for Details ▼ | City State, ZIP | Monthly Rent (Deposit) | Beds/ Baths | Please Call | Date Available | Map |
|---|---|---|---|---|---|---|---|
| ☐ | VetsCare<br>185 Ormond Street<br>*Veterans Only* | Atlanta GA 30315 | $0 - $575<br>Income Based<br>[ ? ]<br>See Qualifications<br>($250)<br>(Negotiable) | 1/1.0 | (Apartments)<br>WestCare Georgia<br>404-761-7485 | Available<br>👟 🏠 R ⊛ | Map |
| ☐ | Atrium at Collegetown<br>435 Joseph E Lowery Blvd | Atlanta GA 30310 | $0 - $925<br>Income Based<br>[ ? ]<br>See Qualifications<br>(None) | 1/1.0 | (Apartments)<br>Mercy Housing<br>404-758-2175 | Available<br>📷 🄱 S<br>🏠 R | Map |
| ☐ | Park Commons Apartments<br>150 Peyton Pl SW | Atlanta GA 30311 | $0 - $704<br>Income Based<br>[ ? ]<br>See Qualifications<br>($300 - $600)<br>(Negotiable) | 1/1.0 | (Apartments)<br>Anita Benjamin<br>404-472-1182 | Available<br>S 🏠 R | Map |
| ☐ | Atlanta N.A.P.F.E Towers<br>359 W Lake Avenue NW<br>Utilities included! | Atlanta GA 30318 | $0 - $1,125<br>Income Based<br>[ ? ]<br>See Qualifications<br>($1,125) | 1/1.0 | (Apartments)<br>National Alliance of Postal<br>Federal Employees<br>404-799-5702 | Available<br>📷 🄶 👟 🄱<br>S 🏠 R | Map |
| ☐ | Atlanta N.A.P.F.E Towers<br>359 W Lake Avenue NW | Atlanta GA 30318 | $0 - $1,056<br>Income Based<br>[ ? ]<br>See Qualifications<br>($0 - $1,056) | 0/1.0 | (Apartments)<br>National Alliance of Postal<br>Federal Employees<br>404-799-5702 | Available<br>📷 🄶 👟 🄱<br>S 🏠 R | Map |
| ☐ | Briarcliff Summit Apts<br>1050 Ponce De Leon Ave. NE<br>Senior Living Apt. 715 | Atlanta GA 30306 | $0 - $1,022<br>Income Based<br>[ ? ]<br>See Qualifications<br>($0 - $1,022)<br>(Negotiable) | 0/1.0 | (Apartments)<br>Preservation Management, Inc<br>404-872-8214 | Available<br>📷 👟 🄱<br>S 🏠 R | Map |
| ☐ | Townhomes at Hapeville<br>2959 Forrest Hills Drive | Atlanta GA 30315 | $0 - $550<br>Not Income Based<br>($400)<br>(Negotiable) | 1/1.0 | (Townhouse)<br>Toni Lingo<br>678-929-7166 | Available<br>📷 🄶 🄱 🏠<br>⊛ | Map |

| ☑ | Click Address for Details ▼ | City State, ZIP | Monthly Rent (Deposit) | Beds/ Baths | Please Call | Date Available | Map |
|---|---|---|---|---|---|---|---|
| ☐ | Baptist Towers Senior Apartments 1881 Myrtle Drive SW | Atlanta GA 30311 | $0 - $541 Income Based [ ? ] See Qualifications ($541) | 0/1.0 | (Apartments) National Church Residences 404-758-4562 | Available 😊 🖳 S 🖳 R | Map |
| ☐ | Baptist Towers Senior Apartments 1881 Myrtle Drive SW | Atlanta GA 30311 | $0 - $541 Income Based [ ? ] See Qualifications ($541) | 1/1.0 | (Apartments) National Church Residences 404-758-4562 | Available 📷 😊 🖳 S 🖳 R | Map |
| ☐ | Edgewood 1281 Caroline St | Atlanta GA 30307 | $0 - $850 Income Based [ ? ] See Qualifications ($300) | 1/1.0 | (Apartments) Columbia Senior Residency at Edgewood 404-681-5611 | Waiting List 🖳 S R | Map |
| ☐ | Briarcliff Summit 1050 Ponce De Leon Ave. NE Senior Living | Atlanta GA 30306 | $0 - $1,100 Income Based [ ? ] See Qualifications ($1,100) (Negotiable) | 1/1.0 | (Apartments) Preservation Management, Inc 404-872-8214 | Waiting List 📷 😊 🖳 S 🖳 R | Map |
| ☐ | Briarcliff Summit Apts 1050 Ponce De Leon Ave. NE Senior Living Apt. | Atlanta GA 30306 | $0 - $1,022 Income Based [ ? ] See Qualifications ($0 - $1,022) (Negotiable) | 0/1.0 | (Apartments) Preservation Management, Inc 404-872-8214 | Waiting List 📷 😊 🖳 S 🖳 R | Map |
| ☐ | Edgewood Court Apartments 1572 Hardee Street | Atlanta GA 30307 | $0 - $795 Income Based [ ? ] ($25 - $795) | 1/1.0 | (Apartments) H. J. Russell & Company 404-373-5378 | Waiting List 🖳 R | Map |
| ☐ | Veranda at Scholar's Landing 130 Lawshe St. SW Accepting Applications for Wait List | Atlanta GA 30310 | $0 - $800 Income Based [ ? ] See Qualifications ($100) | 1/1.0 | (Apartments) Stephanie Reeves 404-756-3018 | Waiting List 🖳 S 🖳 R ⊗ | Map |

| ☷ | Click Address for Details ▼ | City State, ZIP | Monthly Rent (Deposit) | Beds/ Baths | Please Call | Date Available | Map ☐ |
|---|---|---|---|---|---|---|---|
| ☐ | Heritage Station Apartments 765 McDaniels St SW Seniors | Atlanta GA 30310 | $0 - $755 Income Based [ ? ] See Qualifications ($300 - $770) | 1/1.0 | (Apartments) Heritage Station 404-588-5522 | Waiting List 🅱 S  R | Map |
| ☐ | Providence Manor Apartments 2447 Campbellton Road | Atlanta GA 30311 | $0 - $417 Income Based [ ? ] See Qualifications ($417) | 1/1.0 | (Apartments) Housing Resource Center 404-349-6505 | Waiting List 🅱 S 🕅 R | Map |
| ☐ | Veranda At Auburn Pointe I 115 Hilliard Street | Atlanta GA 30312 | $0 - $800 Income Based [ ? ] See Qualifications ($300) | 1/1.0 | (Apartments) Integral Property Management 404-523-1012 | Waiting List 🅱 S 🕅 R | Map |
| ☐ | Veranda At Auburn Pointe I 55 Hilliard Street SE Phase II | Atlanta GA 30312 | $0 - $875 Income Based [ ? ] See Qualifications ($300) | 1/1.0 | (Apartments) Integral Property Management 404-523-1012 | Waiting List 🅱 S 🕅 R | Map |
| ☐ | Veranda At Auburn Pointe I 315 Tanner Street Phase III | Atlanta GA 30312 | $0 - $875 Income Based [ ? ] See Qualifications ($300) | 1/1.0 | (Apartments) Integral Property Management 404-523-1012 | Waiting List 🅱 S 🕅 R | Map |
| ☐ | Centennial Place Apartments 526 Cenntenial Olympic Park Dr. NW | Atlanta GA 30313 | $0 - $452 Income Based [ ? ] ($0 - $452) | 1/1.0 | (Apartments) Integral Property Management 404-892-0772 | Waiting List 🕅 R | Map |

☷ Your Temporary Basket is Empty

☷ Add: ⦿Selected Units ◯Entire Page ◯Entire Search to Temporary Basket

<< Previous  [ Showing Properties 1 - 30 /  Show All 38 Properties ]  Next >>

Under the ⌂ Federal Fair Housing Act of 1968, as amended in 1988, it is illegal to engage in discriminatory advertising based on race, color, religion, sex, familial status, disability, and national origin.

find housing   list housing   disclaimer   privacy   terms   contact us

Toll-Free: 1.877.428.8844 · Toll-Free Fax: 1.866.265.7811 · TDD/TTY: 7-1-1 [  Relay Service ]

Copyright © 2015 · Socialserve.com  · All rights reserved

Email: info@socialserve.com · Socialserve.com · PO Box 35305 · Charlotte, NC 28235

Page Loaded: 08/10/15 11:40 (Eastern Time) · Version 4.0

🏠 ♿

[ XHTML | CSS | 508 | AAA ]

This specific page meets the above validation levels.

*Avesis Dental → 1-888-211-4020*

*Avesis Eye Care → 1-888-211-4013*

# Note This Information *Transportation #*
# About Your Enrollment *1-855-824-5697*

Chances are you'll need the important information below as you get started with your new plan. We've provided spaces for you to write these items down so you will have a handy reference when you need it. Talk with your Licensed Insurance Agent or call Customer Service if you need help with this information.

## 1 Your WellCare Plan

Plan name: *ACCESS*

Proposed date your coverage starts: *September 1st, 2015*

Enrollment confirmation number*:

## 2 Your Primary Care Physician (PCP)

PCP name: *Dr. Lonnie Jenkins MD*   *315 Baluve NE Ste. 516 Atlanta, GA 30312*

PCP phone number: *(404) 265-1235*

Next appointment date:

## 3 Your Pharmacy

Local WellCare network pharmacy: *Wal-Mart / Kroger / Walgreens*

Is this pharmacy:  ☐ Standard Cost-Sharing  *or*  ☑ Preferred Cost-Sharing

Pharmacy phone number:

See page 7 to learn how to save more money when you use one of our network pharmacies that offers preferred cost-sharing.

## 4 Your Support

Customer Service Phone Number: *1-800-462-3861*

Hours of operation are Monday–Friday, 8 a.m. to 8 p.m. Between October 1 and February 14, representatives are available Monday–Sunday, 8 a.m. to 8 p.m. TTY users may call 1-877-247-6272.

Your Licensed Insurance Agent:

Name: *Shunda S Jamona*      Phone Number: *(404) 379-7463*

*Please remember, your membership requires approval from the Centers for Medicare & Medicaid Services (CMS). This may take up to 10 business days.*

# SOCIAL SECURITY ADMINISTRATION

Refer To: 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

Office of Disability Adjudication and Review
SSA ODAR Hearing Office
245 Peachtree Ctr. Avenue
Suite 500, Marquis 1
Atlanta, GA 30303

Date: April 27, 2011

Salins Acosta Weaver
592 Spencer Street N.W.
Atlanta, GA 30314

## Notice of Decision – Fully Favorable

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

### If You Disagree With My Decision

If you disagree with my decision, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Disability Adjudication and Review**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not

Form HA-L76 (03-2010)

See Next Page

filing it on time.

## What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

## How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

## The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

## When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

## If You Have Any Questions

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security. You may also call (800) 772-1213 with questions. If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

Salins Acosta Weaver (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)                                    Page 3 of 3

If you have any other questions, please call, write, or visit any Social Security office. Please have this notice and decision with you. The telephone number of the local office that serves your area is (877)828-1694. Its address is:

> Social Security Administration
> 2630 Martin Luther King Jr. Drive
> Atlanta, GA 30311-1605

> > Christine E. Dibble
> > Administrative Law Judge

Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale


cc:     Gary Flack
        Gary Flack & Associates, P. C.
        Suite #415
        127 Peachtree Street
        Atlanta, GA 30303

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### ORDER OF ADMINISTRATIVE LAW JUDGE

**IN THE CASE OF**                                  **CLAIM FOR**

                                                    Period of Disability, Disability Insurance
Salins Acosta Weaver                                Benefits, and Supplemental Security Income
(Claimant)

                                                    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
(Wage Earner)                                       (Social Security Number)

I approve the fee agreement between the claimant and his representative subject to the condition that the claim results in past-due benefits. My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

### YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement. If so, write us within 15 days from the day you get this order. Tell us that you disagree with the approval of the agreement and give your reasons. Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement. Send your request to this address:

> Ollie Garmon
> Regional Chief Administrative Law Judge
> SSA ODAR Regional Office
> 61 Forsyth Street SW
> Suite 20T10
> Atlanta, GA 30303

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, please write directly to me as the deciding Administrative Law Judge within 15 days of the day you are notified of the amount of the fee due to the representative. Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

/s/ *Christine E. Dibble*

Christine E. Dibble
Administrative Law Judge

April 27, 2011
Date

Form HA-L15 (03-2007)

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

### IN THE CASE OF

### CLAIM FOR

Salins Acosta Weaver

(Claimant)

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

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

(Wage Earner)

(Social Security Number)

## JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated July 9, 2010 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on November 16, 2010, in Atlanta, GA. Roger S. Decker, an impartial vocational expert, also appeared at the hearing. Gary Flack, an attorney, represents the claimant.

The claimant is alleging disability since April 1, 2007.

The undersigned does not find a basis for reopening the claimant's prior Title II application (20 CFR 404.988). Social Security Ruling 91-5p was also considered and does not apply in this case.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2008. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from April 1, 2007, through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

See Next Page

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do

other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant's date last insured is December 31, 2008.**

**2.   The claimant has not engaged in substantial gainful activity since April 1, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

**3.   The claimant has the following severe impairments: depression, posttraumatic stress disorder (PTSD) with psychotic features, schizophrenia, paranoid type, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).**

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant has a poor ability to interact with co-workers and the general public. He has a poor ability to use judgment and deal with normal workplace stressors. Poor is defined as no useful ability to function in this area. The claimant has a fair ability to follow work rules, interact with supervisors and function independently. Fair is defined as the ability to function in this area is seriously limited but not precluded and unsatisfactory.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and

96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p.

The claimant alleged that he is unable to work due to various impairments, including depression, PTSD with psychotic features, schizophrenia, paranoid type, and borderline intellectual functioning. The claimant is a 35-year old man who has been homeless for three years. The claimant testified that he completed the 11th grade and earned his GED. He testified that he last worked in the electrical field as an intermediate journeyman, level II. He stated that he also had worked installing cables for commercial and industrial purposes, but that he had been terminated from that job after five days for incompetence and a manhole safety rule violation. With respect to medical treatment for his mental impairments, the claimant testified that he received treatment at the neighborhood mental health clinic. He testified that he hears voices that no one else can hear. He stated that he takes medications, which make him tired and "sluggish." The claimant also testified that he believes that he has "bio chips" in his body. He stated that he has lived in a vacant house and at a homeless shelter.

The claimant went for a consultative evaluation on May 17, 2010 with Terry J. Orme, Ph.D. in order to further evaluate his allegations of psychological impairments (Exhibit 18F). The claimant reported that he had a chaotic and "traumatic" childhood. The claimant stated that he suffered a gunshot wound in the abdomen and stomach at the age of 15. Dr. Orme noted that the claimant was treated and appeared to recover. The claimant's academic records were reviewed and showed that the claimant's achievement was average to low average, with failing grades before the claimant left school after the eleventh grade. The claimant has one child, age 12. He told Dr. Orme that he had been living on the streets since 2006. He reported that he had lost seven jobs in the last year because "it seems like I just break down." The claimant told Dr. Orme that he had ongoing treatment for his psychological problems since his teenage years. At the time of the evaluation, the claimant was being treated for his depressive symptomology and has been treated with Risperdal and Wellbutrin. Dr. Orme noted that the claimant has delusions regarding physical impairment such as that syphilis has affected his entire body. He stated that he also has delusions relating to his sperm being spread about the city and affecting different children without his permission. Dr. Orme noted that the claimant's medications were Wellbutrin, Risperdal, Abilify, Flexeril and Ibuprofen. The claimant admitted to a lack of compliance in taking his antipsychotic medications (Exhibit 18F). Dr. Orme noted that the claimant's concentration, task persistence, and frustration tolerance all appeared to be deeply disturbed due to the claimant's thought disorder. On the Weschler Adult Intelligence Scale Test, the claimant scored a full scale IQ of 71, which is indicative of borderline intellectual functioning. Dr. Orme diagnosed schizophrenia, paranoid type and rule-out syphilitic dementia on Axis I and borderline intellectual functioning on Axis II. He assigned a current Global Assessment of Functioning (GAF) of 46, which is indicative of serious symptomology and major impairment in social and occupational functioning. Dr. Orme noted that the claimant was a poorly organized individual with active delusions and hallucinations in place. The undersigned gives controlling weight to Dr. Orme's opinions because they are supported by the evidence of record. Given the reports of the psychological examination, the undersigned has assigned the above-stated limitations with respect to the claimant's residual functional capacity.

See Next Page

With regard to the alleged physical impairments, including gunshot wound, back pain and
muscle pain, the undersigned also carefully considered the medical evidence of record. The
claimant went for a consultative evaluation (CE) with Bobby A. Crocker, M.D., on August 22,
2009 in order to further evaluate the allegations of physical impairments (Exhibit 12F). At the
CE, the claimant gave a history of gunshot wound to the lower abdomen with exit through his
buttocks at the age of 14 years. The claimant reported that he was hospitalized for two months
with injuries, including two surgeries. He complained of daily achiness over the left upper
quadrant, and reported frequent diarrhea, nausea and vomiting. He also complained of pain over
his mid and lower back and left buttocks, which he believed to be related to the gunshot wound
and labor-type activities. The claimant also reported a history of gunshot wound to the right
knee area, and complained of daily right knee pain, which he reported was aggravated by
standing and walking. Upon examination, Dr. Crocker found the claimant to be five feet, eight
and a half inches tall and 150 pounds. The right knee showed an old gunshot wound, but was not
tender, swollen or warm. Dr. Crocker's examination of the claimant's neck showed no muscle
spasms, tenderness, scarring or swelling and examination of the back showed no tenderness and
full range of motion throughout the spine. Dr. Crocker noted that the claimant was able to get on
and off the examining table without difficulty. The claimant also had five out of five motor
strength in all extremities and a straight leg raise was negative bilaterally. The claimant's grip
strength was normal and he was able to walk without an assistive device. Dr. Crocker further
noted that the claimant did not have any functional limitation with respect to his physical
impairments (Exhibit 12F). The undersigned gives significant weight to Dr. Crocker's opinion
regarding the claimant's functional capacity relative to the alleged physical impairments because
it is supported by the evidence of record. Given the reports of the medical examinations, the
residual functional capacity evaluation as stated above is appropriate.

After considering the evidence of record, the undersigned finds that the claimant's medically
determinable impairments could reasonably be expected to produce the alleged symptoms, and
that the claimant's statements concerning the intensity, persistence and limiting effects of these
symptoms are generally credible.

The non-examining State agency psychological consultant's mental assessment is given little
weight because the State agency consultant did not adequately consider the claimant's subjective
complaints or the combined effect of the claimant's impairments (Exhibits 4F, 5F and 10F).

The evidence as a whole confirms disabling pain and limitations arising from the claimant's
underlying medical conditions, and supports a conclusion that the objectively determined
medical conditions are of such severity that they could reasonably be expected to give rise to
disabling limitations. After having carefully considered the entire documentary evidence of
record, as well as the testimony at the hearing, the undersigned concludes that the claimant
retains the residual functional capacity as described above.

In sum, the above residual functional capacity assessment is supported by the claimant's medical
records, testimony, and level of daily activity; further it accounts for all of the claimant's
limitations established by the medical evidence of record. The undersigned finds support for the
claimant's allegations that his conditions individually or in combination have rendered him

totally disabled and incapable of all work activity. Therefore, the undersigned finds that the claimant has the residual functional capacity as stated above.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The demands of the claimant's past relevant work exceed the residual functional capacity.

**7.   The claimant was a younger individual age 18-44 on the established disability onset date (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. These limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11.   The claimant has been under a disability as defined in the Social Security Act since April 1, 2007, the alleged onset date of disability (20 CFR 404.1520(g) and 416.920(g)).**

### DECISION

Case 1:15-cv-02816-WSD   Document 3   Filed 08/12/15   Page 23 of 23

Based on the application for a period of disability and disability insurance benefits protectively filed on October 31, 2008, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since April 1, 2007.

Based on the application for supplemental security income protectively filed on October 31, 2008, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since April 1, 2007.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

Medical improvement is expected with appropriate treatment. Consequently, a continuing disability review is recommended in 12 months.

A determination to appoint a representative payee to manage payments in the claimant's interest is recommended.

/s/ *Christine E. Dibble*

Christine E. Dibble
Administrative Law Judge

April 27, 2011
Date